**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DORENDA DAVIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Case No.:** |
| | ) | |
| ADVANCED CREDIT RECOVERY, INC., | ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant | ) | **(Unlawful Debt Collection Practices)** |

## COMPLAINT

DORENDA DAVIS ("Plaintiff"), by her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against ADVANCED CREDIT RECOVERY, INC. ("Defendant"):

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and 28 U.S.C. § 1331 grants this court original jurisdiction over the federal claims contained therein.

3. Defendant conducts business in the State of Delaware, and as such, personal jurisdiction is established.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

5. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6. Plaintiff is a natural person residing in Bear, Delaware, 19701.

7. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692a(3), as she is a natural person allegedly obligated to pay a debt.

8. Defendant is a national debt collection company with its principal place of business located at 6000 North Bailey Avenue, Suite 1E in Amherst, New York, 14226.

9. Defendant is a debt collector as that term is defined by 15 U.S.C. § 1692a(6), and repeatedly contacted Plaintiff when attempting to collect a debt.

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## PRELIMINARY STATEMENT

11. The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with

the collection of debts by third parties. See 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

12. In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses

any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

13. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692b.

14. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

## FACTUAL ALLEGATIONS

15. At all pertinent times hereto, Defendant was hired by Cash Net USA, a payday loan company, to collect a consumer debt allegedly owed by Plaintiff.

16. The alleged debt at issue arose out of transactions which were

primarily for personal, family, or household purposes.

17. Beginning on or about March 16, 2010, Defendant repeatedly and continuously contacted Plaintiff on her cellular telephone in an attempt to collect a debt.

18. On average, Defendant contacted Plaintiff almost everyday, causing her to receive at least one telephone call and at times more than four (4) telephone calls in a day.

19. Defendant contacted Plaintiff numerous times via her cellular telephone, during her work day. Defendant's calls were inconvenient due to the fact that Plaintiff was not allowed to receive calls at her place of employment.

20. Defendant left multiple voice mail messages on Plaintiff's cellular telephone in its attempts to collect a debt.

21. In its voice mail messages to Plaintiff, Defendant stated that Plaintiff was "being sued," that she "had to appear in court within 24 hours," and that if she did not, "a judgment would be entered against [her]." At the time Defendant made these statements, Defendant had not sued Plaintiff and Plaintiff was not required to appear in court within 24 hours.

22. Defendant contacted Plaintiff at inconvenient times, for example at 7:30 am

23. On or about March 23, 2010, Defendant, through its employee "Bill Stewart", contacted Plaintiff at her place of employment via her cellular telephone.

24. In order to cause Plaintiff to pay the alleged debt, Mr. Stewart threatened Plaintiff that she had to appear in court within 24 hours or a lien would be placed on her property and that her employer would be notified about this matter.

25. On March 24, 2010, Defendant's employee, Mr. Stewart, told Plaintiff that she was in the National Check Fraud database.

26. Mr. Stewart informed Plaintiff that Defendant had reported Plaintiff's debt to the three (3) credit reporting bureaus.

27. Mr. Stewart threatened Plaintiff that "his company could garnish her wages."

28. Mr. Stewart further threatened Plaintiff that Defendant will have a "lien placed on [Plaintiff's] house and car, claiming he could do this because "Delaware is a community state."

29. Defendant's threats ultimately caused Plaintiff to agree to make payments on the alleged debt, but Plaintiff told Defendant a payment could not be made until April 12, 2010.

30. Disregarding Plaintiff's statements, Mr. Stewart told Plaintiff he had to postdate the payment for March 31, 2010, and that payment would clear on or

about April 2, 2010.

31. Plaintiff objected telling Mr. Stewart that funds would not be available in her account until April 12, 2010.

32. On March 31, 2010, Defendant attempted to withdraw money from Plaintiff's bank account, causing an overdraft on Plaintiff's bank account.

33. Plaintiff contacted Mr. Stewart, and Mr. Stewart claimed that if Plaintiff faxed him proof of the overdraft that Defendant would refund the overdraft fee.

34. Then, on April 8, 2010, Defendant again attempted to withdraw money from Plaintiff's bank account, which again caused Plaintiff's account to overdraft.

35. On April 9, 2010, when Plaintiff contacted Defendant regarding the second overdraft, Defendant and its employees yelled at her and hung up on her three (3) times.

36. Plaintiff called Defendant a fourth time in order to get its mailing address; however, Defendant refused to provide Plaintiff with its address.

37. Panicked, Plaintiff contacted Defendant a fifth time. This time, Defendant provided Plaintiff its address, but Defendant's employee spoke to Plaintiff in a rude tone.

38. Defendant's attempt to withdraw money from Plaintiff's bank account on April 8, 2010, without Plaintiff's authorization, caused Plaintiff to miss other scheduled withdrawals and incur other overdraft fees.

39. Plaintiff incurred over $100.00 in bank overdraft fees as a result of Defendant's unauthorized attempts to withdraw money from her account.

40. Finally, within five (5) days of its initial contact with Plaintiff, Defendant failed to send Plaintiff written notification of her rights to dispute the debt and/or request verification of the debt.

41. Defendant's actions in attempting to collect the alleged debt were harassing, unfair, deceptive and substantially false.

## CONSTRUCTION OF APPLICABLE LAW

42. The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F. 3d 30 (2nd Cir. 1996); see also Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); Clomon v. Jackson, 988 F. 2d 1314 (2nd Cir. 1993).

43. The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C § 1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107 (10th Cir. 2002).

44. The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985); Graziano v. Harrison, 950 F. 2d 107 (3rd Cir. 1991); Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222 (9th Cir. 1988). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Id. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. Clomon, 988 F. 2d at 1318.

**COUNT I**
**DEFENDANT VIOLATED THE**
**FAIR DEBT COLLECTION PRACTICES ACT**

45. Defendant violated the FDCPA in the following ways:

a. Communicating with the consumer in connection with the collection of the alleged debt at an unusual time or place, and a place know to be inconvenient to the consumer, specifically communicating with Plaintiff before 8:00 a.m., in violation of 15 U.S.C. §1692c(1);

b. Communicating with the consumer in connection with the collection of the alleged debt at the consumer's place of employment when Defendant knew or had reason to know that Plaintiff's employer prohibited her from receiving such communications, in violation of 15 U.S.C. §1692c(3);

c. Engaging in conduct of which the natural consequence is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of 15 U.S.C. §1692d;

d. Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number, in violation of 15 U.S.C. §1692d(5);

e. Using false, deceptive, or misleading representation or means in connection with the collection of the alleged debt, in violation of 15 U.S.C. §1692e;

f. Falsely representing the legal status of the alleged debt, in violation of 15 U.S.C. §1692e(2)(A);

g.  Representing or implicating that nonpayment of the alleged debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful, in violation of 15 U.S.C. §1692e(4);

h.  Threatening to take action that cannot be legally taken or that is not intended to be taken, in violation of 15 U.S.C. §1692e(5);

i.  Falsely representing or implicating that Plaintiff committed a crime or other conduct in order to disgrace Plaintiff, in violation of 15 U.S.C. §1692e(7);

j.  Using false representation or deceptive means to collect or attempt the collect the alleged debt, in violation of 15 U.S.C. §1692e(10);

k.  Using unfair or unconscionable means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. §1692f;

l.  Accepting a check postdated by more than five days without notifying Plaintiff in writing of Defendant's intent to deposit such check or instrument not less than three business days prior to such deposit, in violation of 15 U.S.C. §1692f(2); and

m.  Failing to send, within five days after the initial communication with the consumer, a written notice containing a statement that unless the consumer, within 30 thirty days after receipt of the notice, disputes the validity of the debt, the debt will be assumed to be valid by the collector, in violation of 15 U.S.C. §1692g.

46. As a result of the above violations of the FDCPA, Defendant is liable to Plaintiff in the sum of Plaintiff's actual damages, statutory damages, and attorney's fees and costs.

**WHEREFORE**, Plaintiff, DORENDA DAVIS, respectfully prays for a judgment as follows:

    a. Declaratory judgment that Defendant's conduct violated the FDCPA;

    b. All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

    c. Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    d. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1692k(a)(3); and

    e. Any other relief deemed appropriate by this Honorable Court.

**JURY DEMAND**

Pursuant to Civil Rule 38, Plaintiff hereby demands a trial by jury on all issues in this action, and any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of her claims in this action.

RESPECTFULLY SUBMITTED,

DATED: 12-27-10

KIMMEL & SILVERMAN, P.C..

By: ______________________

W.Christopher Componovo
Attorney ID # 3234
Kimmel & Silverman, PC
Silverside Carr Executive Center
Suite 118, 501 Silverside Road
Wilmington, DE 19809
(302) 791-9373 phone
(302) 791-9476 fax